be discovered, then constructive notice exists. And within the rule laid down in the McDonald Case, if there is any evidence of such notice to submit to a jury, the court cannot nonsuit, although it may set aside the verdict after it is rendered, if it is contrary to or against the weight of the evidence.

In this case, the evidence warrants the finding that the walk was defective, that it had a crossgrained broken plank, and it had laid in the walk for some time, and until it was rotten. It seems to me that there was at least some evidence that the defective condition had existed for a length of time, authorizing the finding of constructive notice thereof to the defendant.

I do not think the court was justified in granting a nonsuit upon this ground. It is within the knowledge of all of us that too many defective sidewalks with rotten and broken planks are allowed to remain in municipalities, to endanger the limbs of persons walking over them. The municipalities should be held to strict accountability for accidents occurring by reason thereof.

Judgment reversed, and new trial ordered; with costs to appellant to abide event. All concur.

---

In re BENSEL et al., Board of Water Supply.

(Supreme Court, Appellate Division, Third Department. May 20, 1910.)

1. EMINENT DOMAIN (§ 230*)—TAKING PROPERTY—EXPENSES OF COMMISSIONERS OF APPRAISAL—TIME OF ALLOWANCE.

Laws 1905, c. 724, § 11, as amended by Laws 1906, c. 314, § 2, provides that the city of New York shall be seised in fee and may take possession of the property sought to be condemned when the commissioners file their oath of office, on paying the owners one-half of the assessed value. Section 17, as amended by Laws 1906, c. 314, § 4, requires the awards for the property to be paid the owners within three months after confirmation of the commissioners' report. Section 21 provides for the making of separate reports by the commissioners. Laws 1905, c. 725, § 1, relating to the acquisition of property by the city for water supply, and providing for prompt payment therefor, prohibits any more parcels from being submitted to the same set of commissioners of appraisal at one time than can reasonably be passed upon, and an award made thereon within one year after taking their oaths of office. Chapter 724, § 32, provides that the commissioners of appraisal shall receive as compensation such fees and expenses as may be taxed by the court upon notice to the corporation counsel; and Laws 1905, c. 725, § 5, contains the same provision. *Held*, that the commissioners of appraisal could make separate reports, when their work as to separate parcels was completed, and could apply for the allowance of fees and expenses as to the matters covered by such separate reports without the consent of the corporation counsel, and the court cannot consider any taxation allowed on prior reports in making such allowance.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 584; Dec. Dig. § 230.*]

2. EMINENT DOMAIN (§ 230*)—TAKING LAND—EXPENSE OF COMMISSIONERS OF APPRAISAL—TRANSPORTATION EXPENSE.

While automobiles should not be used by the commissioners of appraisal for viewing land to be condemned for the city of New York for water purposes, where the property can be reasonably reached by railroad, expense of the commissioners for automobiles for that purpose

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

will be allowed them, where the commissioners were orally authorized to hire and pay for automobiles when needed to view property and present the cost for taxation as fees and expenses; they not having been subsequently notified that expense for automobile hire would not be allowed.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 584; Dec. Dig. § 230.*]

3. EMINENT DOMAIN (§ 230*)—PROCEEDINGS—COMPENSATION OF COMMISSIONERS OF APPRAISAL.

In view of Laws 1905, c. 724, § 32, and chapter 725, § 5, providing that the commissioners of appraisal shall receive as compensation such fees and expenses as may be taxed by the court upon notice to the corporation counsel, the commissioners are entitled to reasonable compensation for services actually and necessarily rendered, and not to compensation on a per diem basis, and, in determining their compensation, the number and character of the cases considered by them, the circumstances under which the work was done, the amount of time reasonably required to do it, and its character and quality, as well as the amounts of their awards, may be considered.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 584; Dec. Dig. § 230.*]

Appeal from Special Term, Albany County.

In the Matter of the Petition of John A. Bensel and others, constituting the Board of Water Supply of the City of New York, to acquire realty, etc. Application for the taxation and allowance of the fees and expenses of Commissioners of Appraisal. Applications allowed as stated.

The following is the opinion of Chester, J., at Special Term:

These three separate applications to tax fees and expenses of commissioners of appraisal in the above matters may be considered together. With respect to two of the applications the corporation counsel objects to the taxation of any fees at this time on the ground that the commissioners have not concluded their labors and claim that the court has no power to tax fees, under the law, except by his consent until the completion of all the work committed to them. He also insists that the amount of compensation awarded to them upon their prior applications must be taken into consideration in fixing their fees when the work is concluded. I cannot agree with these contentions The act under which the commissions are acting and the condemnations of property are being made (chapter 724, Laws 1905) provides, in section 11, as amended by Laws 1906, c. 314, § 2, that the city of New York shall be seised in fee and may take possession of the property sought to be condemned when the commissioners file their oath of office on paying the owners one-half of the assessed value, and in section 17, as amended by Laws 1906, c. 314, § 4, that the awards for the property less the advances shall be payable to the owners within three calendar months after the confirmation of the report of the commissioners. Section 21 expressly provides for the making of separate reports by them. One purpose of this apparently is to prevent a long delay in making payment to owners, after having been deprived of the possession of their property, which would result if such reports and payments should not be made until the commissioners concluded all their labors. Section 1 of chapter 725 of the Laws of 1905, relating to the acquisition of property by the city of New York for water supply, and providing for prompt payment therefor, provides that no more parcels shall be submitted to the same set of commissioners of appraisal at one time than can be reasonably passed upon and an award made by them within one year after taking their oaths of office. The law is, therefore, clear that the commissioners have the right to make separate reports when their labor as to several parcels is completed.

I see no reason, under the law, why they may not also make separate applications to have their fees and expenses taxed, as to the matters covered

by a separate report, for as to those matters their services are necessarily concluded.

The act (chapter 724) provides in section 32 that the commissioners of appraisal shall receive as compensation such fees and expenses as may be taxed by the court upon notice to the corporation counsel. The same provision is found in section 5 of the amendatory act of 1905 (chapter 725). Each of the commissioners now asking compensation have presented prior reports, and their fees and expenses for matters covered in such prior reports have been heretofore taxed. The allowances then made were for their services in relation to matters involved in such prior reports and for their expenses incidental thereto, and were not on account of their services generally. Those allowances depended upon the proofs presented to the court on the prior taxation and are not in any way related to the matters involved here. I think, therefore, when commissioners have concluded their labors with respect to the several parcels included in a separate report, they are entitled, under the law, to present their claims for fees and expenses to the court for taxation, and that the court cannot take into account any prior taxation.

The corporation counsel objects to certain disbursements for automobiles used by the commissioners in visiting the property sought to be condemned for the purpose of viewing it, as they are required to do under the law. I quite agree with him that these charges are large, and that automobiles should not be employed against the objection of the city, where it is possible to reach a point reasonably near the property by railroad at a time of day when sufficient time would be afforded to view the property and return by the same means. It appears, however, that early in these proceedings a custom grew up under which the assistants employed by the then corporation counsel made arrangements to provide commissioners with automobiles in going to the property and which they could have upon notice to the clerk of commissions employed by the corporation counsel at Kingston; the expense therefor being paid in the first instance by those representing the city. In August of last year the commissioners were verbally notified that thereafter no automobiles could be secured through the office of the clerk of commissioners, but when necessary could be procured and paid for by the commissioners themselves, and be by them included in their expenses presented for taxation rather than to be paid through the corporation counsel's office in the first instance. After the corporation counsel's office had inaugurated this method for getting the commissioners to the property, it is hardly fair to deny them the expense they have actually incurred in following that custom, until after they have been notified that disbursements for automobiles in the future would be objected to. No such notice appears to have been given to these commissioners. I am inclined, therefore, to tax the items the commissioners swear they have paid or incurred for this purpose, as well as the other items included in their verified bills of expenses.

It appears to have been the custom in the past in this district at least to tax the fees of commissioners upon a per diem basis. Under that system there has been an evident disposition to prolong the work of commissions to an undue length. There is nothing in the law providing for compensation on that basis. The fair meaning of the law is that they should be paid reasonable compensation for the services actually and necessarily rendered. The affidavits on these applications give the number of days separately devoted to taking testimony, to viewing property, to executive sessions, and in one case the number of days devoted to reading testimony, examining authorities, making estimates of values and work of that character by individual commissioners. I cannot avoid the conclusion that the duties devolved upon these commissioners could have been properly discharged in a much less number of days and in considerable less time than is stated in their affidavits to have been employed. There is no reason, when commissioners devote only a portion of a day to hearing testimony, why they should not devote the rest of it to considering the case or to executive sessions necessary to its determination; but this course has rarely been pursued. If we measure the work of these commissioners by the time employed by judges and courts in doing work of a similar character, it is apparent that altogether too many days have been occupied, and that the work could have been well done by employing

much less time. It is unnecessary, however, on these applications, to determine whether all the days indicated by the affidavits as having been employed by the commissioners were reasonably required for that purpose. It is sufficient to make reasonable compensation for the work done, whether it took them parts of 25 days or of 75 days to do it. The number and character of the cases before them, the circumstances under which the work was done, the amount of time reasonably required for doing it; the character and quality of the work done by the commissioners, and the amounts of their awards, may all be considered in fixing their compensation. I have examined these cases together because, in view of all these considerations, there is no substantial difference between them in the amount which I deem to be reasonable compensation on these several applications, and I have concluded to allow each the sum of $2,000, besides their disbursements, which have been verified by their respective affidavits.

Argued before SMITH, P. J., and KELLOGG, SEWELL, COCHRANE, and HOUGHTON, JJ.

Archibald R. Watson, Corp. Counsel (Oliver B. Goldsmith and William McM. Speer, of counsel), for the City of New York.

J. Rider Cady, for Commissioners, Section 11.

George E. Weller, for Commissioners, Section 15.

D. C. Robinson and Severyn B. Sharpe, for Commissioners, Section 16.

PER CURIAM. Order affirmed, with $10 costs and disbursements, on opinion of Chester, J., at Special Term.

---

### SIEGEL v. STATE BANK.

(Supreme Court, Appellate Term. May 24, 1910.)

1. BANKS AND BANKING (§ 300*)—SAVINGS BANKS—REPAYMENT OF DEPOSIT—LIMITATION OF LIABILITY.

A depositor in a so-called "inactive department" of a bank, not sufficiently familiar with English to understand what was printed on the fly leaf of his pass book, cannot be charged with knowledge of a limitation of the bank's liability, when it was not called to his attention by the bank officials, and there was nothing in the circumstances to indicate to him the necessity for knowing what this printed matter meant; and hence it is solely responsible for payments made on his forged signature, notwithstanding the limitation.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 1159–1161; Dec. Dig. § 300.*]

2. BANKS AND BANKING (§ 289*)—SAVINGS BANK—LEGAL PRINCIPLES GOVERNING.

In absence of rules assented to by its customers, a savings bank is to be governed by the same legal principles which apply to other moneyed institutions.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 289.*]

3. BANKS AND BANKING (§ 301*)—DEPOSITS—CARE IN PAYING OUT MONEY.

Officers are not relieved from using reasonable care in paying out a depositor's money, though provisions in his pass book approximate it to the case of an ordinary savings bank.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 1164; Dec. Dig. § 301.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes